Michael I. Levin, Esquire
Stacy G. Smith, Esquire
LEVIN LEGAL GROUP, P.C.
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA  19006
215-938-6378
(Counsel for Max Weisman)

---

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MAX WEISMAN, | : | |
|   Plaintiff | : | |
|  | : | CIVIL ACTION NO. 04-cv-4719 |
|     vs. | : | |
|  | : | JURY TRIAL DEMANDED |
| BUCKINGHAM TOWNSHIP; | : | |
| BUCKINGHAM TOWNSHIP BOARD | : | |
| OF SUPERVISORS; RAYMOND | : | |
| STEPNOSKI, HENRY ROWAN; and | : | |
| JANET FRENCH, | : | |
|   Defendants | : | |
|  | : | |

### AMENDED COMPLAINT

AND NOW, comes the Plaintiff, Max Weisman, by and through his attorneys, the

LEVIN LEGAL GROUP, P.C., who files this Amended Complaint, and who, in support

thereof, alleges the following:

### Preliminary Allegations

1.  This action is brought to obtain an award of damages, declaratory and injunctive

    relief, attorneys fees and other relief as allowed by law by Plaintiff, Max Weisman,

    (hereinafter referred to as "Weisman") a former employee of the Defendant

    Buckingham Township who has been harmed by the Defendants' illegal,

discriminatory, retaliatory,  tortious conduct and their actions in breach of his employment agreement and severance agreement, all as more particularly set forth in this Amended Complaint.

2.   This action arises under Section 1983, 42 U.S.C. §1983;  the Americans with Disabilities Act,  42 U.S.C. § 12101 *et seq*.; the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.;* the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq*.; the Sunshine Act, 65 P.S. § 701, *et seq*, and common law causes of action for breach of contract and tortious interference with contractual relations, all as more particularly set forth in this Complaint

## Jurisdiction

3.   The original jurisdiction of this Court and venue in this District is invoked pursuant to 28 U.S.C. §1331 and § 1391.

4.   Venue in this Court is proper as all actions complained of occurred within the boundaries of the United States District Court for the Eastern District of Pennsylvania.

5.   The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, to consider Weisman's claim arising under Pennsylvania state law claims.

6.   Weisman also seeks declaratory relief and invokes the jurisdiction of the court pursuant to 28 U.S.C. §2201.

7.   All conditions precedent to the filing of this lawsuit have been fulfilled.  On July 15, 2004, a Notice of Right to Sue was issued by the United States Department of Justice, and this action has been filed within ninety (90) days of receipt of the notice.  Notice permitting the filing of suit in court has also been received from the

Pennsylvania Human Relations Commission. The notices from both the United States Department of Justice and the Pennsylvania Human Relations Commission are attached hereto as Exhibit "A."

**Parties**

8.   Plaintiff, Max Weisman, is an individual and citizen of the Commonwealth of Pennsylvania and resides therein at 148 North Timber Road, Holland, Pennsylvania. Weisman suffers from bi-polar disorder, panic disorder and major depression.  At times relevant to this action, Weisman was Township Manager of Buckingham Township.

9.   Defendant Buckingham Township, (hereinafter "Township"), is a political subdivision duly organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a place of business with Township offices located at 4613 Hughesian Drive, Buckingham, PA 18912.  It is believed and therefore averred that the Township employs, and did employ at all times relevant hereto, approximately or in excess of fifty (50) full time employees.

10.   Defendant   Buckingham   Township   Board   of   Supervisors,   (hereinafter "Supervisors"), is the governing body of Buckingham Township with offices located at 4613 Hughesian Drive, Buckingham, PA 18912.

11.   Defendant, Raymond Stepnoski (hereinafter referred to as "Stepnoski"), was the Chairman of the Board of Supervisors, an elected, nominally paid position, while Weisman was the Township Manager.  After Weisman became disabled, Stepnoski took over the fully paid position of "Acting" Township Manager, and ultimately became Township Manager, the position the holds at the current time. Stepnoski

maintains his office at the Township offices in Buckingham, Pennsylvania and resides in the Commonwealth of Pennsylvania at 3105 Brentwood Drive, Doylestown, PA. Stepnoski is being sued in his official and individual capacities.

12. Defendant Henry Rowan is an adult individual and, at all times relevant hereto, was a supervisor of the Township with an office address at 4613 Hughesian Drive, Buckingham, Pennsylvania and a home address at 3962 Regina Place, Doylestown, Pennsylvania. Rowan is being sued in his official and individual capacities

13. Defendant Janet French is an adult individual and at all relevant times hereto was a supervisor of the Township with an office address at 4613 Hughesian Drive, Buckingham, Pennsylvania, and a home address at PO Box 225, Mechanicsville, Pennsylvania. French is being sued in her official and individual capacities.

### Facts Underlying Causes of Action

14. Weisman has been suffering from depression since his teenage years and has had a mental impairment that has been diagnosed as bi-polar disorder, panic disorder and major depression since approximately November 1997.

15. The impairments from said illnesses wax and wane in severity, but substantially limit and has limited major life activities of work, concentration, and thinking.

16. Except during acute and temporary episodes, Weisman was able to perform the essential functions of his job with the Township with and without reasonable accommodations.

17. At all times relevant to this action, Weisman has been a qualified individual with a disability as defined in the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

18. Weisman began his employment with the Township in September, 1998 as the Finance Director.

19. In or about November, 1999, Weisman was appointed by the Supervisors to the position of "Interim Township Manager."

20. Between November 1999 and July, 2000, Weisman was employed as both the Finance Director and Interim Township Manager.

21. Because of his exemplary service, Weisman was offered the position of Township Manager in approximately February, 2000 by the Supervisors.

22. Between February, 2000 and June, 2000, Weisman negotiated the terms of his employment as Township Manager with the Supervisors.

23. In June, 2000, Weisman presented an employment contract and severance agreement to the Supervisors which memorialized the agreed upon terms of the negotiations.

24. The employment contract set forth, not only salary, but also other terms including but not limited to, vacation time, pension plan, life insurance, dues and subscriptions, disability and continuing education.

25. A true and correct copy of the employment agreement is attached hereto as Exhibit "B" and a true and correct copy of the severance agreement is attached hereto as Exhibit "C".

26. During the time period surrounding the preparation of the agreements between Weisman and the Supervisors, a new solicitor was hired by the Supervisors. The new solicitor's effective date of hire was in or approximately July 2000.

27. Weisman was informed that the Supervisors agreed with the employment agreement and the severance agreement and that the employment agreement and the severance agreement would be signed after the new solicitor had an opportunity to review the documents.

28. In July, 2000, all terms of the employment agreement were put into place, including, but not limited to the following: Weisman was named Township Manager, his salary was paid in accordance with the terms of the contract, his pension plan was put in place, he was given the use of a Township vehicle, and his continuing education classes were paid.

29. Between June 2000 and December, 2002, Weisman was regularly assured by the Supervisors and the solicitor that the terms of both agreements were acceptable and that the written contracts would be signed in due course.

30. At all times relevant hereto, Weisman was acting in justifiable reliance upon the representations made to him that the terms of both agreements as set forth above were acceptable to the Township and were being implemented.

31. In March, 2001, Weisman required an extended leave in order to donate a kidney to an ill relative.  So that Weisman would not have a lapse in salary while he was ill, the Township, and specifically Dana Cozza (hereinafter referred to as "Cozza"), as Director of Human Resources, advanced him two weeks of sick leave.

32. The advancement of two weeks of sick leave was an unwritten but regularly implemented policy, practice and/or custom of the Township.

33. As of the beginning of December, 2002, it is believed and therefore averred that no employee or Supervisor at the Township was aware of Weisman's disability.

34.   On or about December 2, 2002, Weisman left work around lunchtime because of symptoms related to his illness.

35.   After seeing his doctor on or about December 4, 2002, Weisman began intensive treatment in a partial hospitalization program on or about December 6, 2004.

36.   Weisman did not initially inform the Township of the true nature of his illness because, at the time, he was embarrassed and ashamed of his mental illness. Instead, Weisman initially informed Cozza that he was suffering from pneumonia.

37.   On or about December 12, 2002, Weisman received a letter, attached hereto as Exhibit "D", from Stepnoski indicating that he was being placed on leave under the Family and Medical Leave Act and notifying him that he was being considered as a "key employee," and that he might not be permitted to work following his Family and Medical Leave Act leave.

38.   On or about December 20, 2002, Weisman received his pay stub.  He was paid for all accrued sick, personal and vacation time.  He was not advanced two weeks of sick leave as had been provided to employees in the past as a matter of course.

39.   On or about December 22, 2002, Weisman spoke with Cozza and inquired about the failure of the Township to advance him two weeks sick leave.  Cozza informed him that although she had done the paperwork to advance him the two weeks leave, Stepnoski, as Chairman of the Board of Supervisors, told her not to advance Weisman the sick leave.

40.   On December 30, 2002 Weisman disclosed the true nature of his disability to Cozza through a letter accompanying his completed medical forms. Weisman asked that this information be kept confidential under the Americans with Disabilities Act as

there was no reason why the Supervisors or any other Township employee needed to know the nature of Weisman's illness.  A true and correct copy of the December 30, 2002, letter and enclosures is attached hereto as Exhibit "E".

41.  On December 30, 2002, Weisman informed the Township in this letter that he was disabled.  Weisman requested to be paid according to the disability provisions in his employment contract.  Weisman requested accommodations due to his disability.

42.  In response, the Defendants did not offer to engage in an interactive process or pay any disability benefits.

43.  Weisman received a letter from Stepnoski on or about January 13, 2003 indicating that the Supervisors had been made aware of Weisman's specific disability.

44.  On January 22, 2003 articles were published in the local newspapers indicating that Weisman was on an extended leave of absence due to an illness and that Stepnoski was "running" the Township.

45.  Other people who were associated with the Township or did business with the Township told Weisman that they heard rumors concerning Weisman's specific illness or were made aware of his specific illness.

46.  These additional disclosures by Stepnoski, Rowan, French and /or Cozza caused Weisman further stress, humiliation, embarrassment and anxiety as friends, associates and acquaintances began calling Weisman in concern for his health and welfare.

47.  The disclosures prevented Weisman from applying for similar positions with other Townships.

48.  Because of the refusal and/or failure of the Defendants to provide to Weisman rights and benefits to which he was entitled, on or about February 14, 2003, Weisman filed a Complaint with the Pennsylvania Human Relations Commission, dual filed with the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit "F".

49.  On or about February 3, 2003  counsel for Weisman advised counsel for the Township of the filing of the aforesaid complaint, by and through the letter attached hereto as Exhibit "G".

50.  On February 28, 2003, Weisman received a letter from Henry Rowan, Vice Chairman of the Township Board of Supervisors terminating his employment with the Township.  A true and correct copy of said letter is attached hereto as Exhibit "H".

51.  Rowan's letter indicated that the reason for the termination was Weisman's failure to return to work following his Family and Medical Leave Act leave.

52.  Prior to Weisman's receipt of the termination letter, neither Cozza, Stepnoski, Rowan, nor any other Township employee or official informed Weisman that they considered his Family and Medical Leave Act leave expired or that they intended on terminating his employment if he was unable to return to work.

53.  Stepnoski, who at the time of Weisman's leave was the Chairman of the Board of Supervisors, began taking over Weisman's responsibilities at the Township.

54.  It is believed and therefore averred that in late 2002, Stepnoski was laid off from his full time employment.

55.   On February 12, 2003, Stepnoski resigned from his position as Chairman of the Board of Supervisors.

56.   At the same February 12, 2003 meeting of the Township Supervisors, Stepnoski was then appointed by the remaining Supervisors to replace Weisman.  Stepnoski was named "interim Township Manager," a paid position with the Township.

57.   At all times prior to the start of Weisman's leave on December 2, 2002, Weisman was an exemplary employee.

58.   At no time prior to the start of Weisman's leave on December 2, 2002, was Weisman ever reprimanded, disciplined, demoted, or rated unsatisfactory, and when rated, he was rated excellent.

59.   On or about March 13, 2003, the Township notified Weisman of his right to continue to participate in the Township's heath care plan pursuant to the Consolidated Omnibus Reconciliation Act (COBRA).   The Township's representations concerning Weisman's duties under COBRA were inconsistent with the law.  It was only after counsel for both Weisman and the Township became involved did the Township follow the legal requirements of COBRA.

60.   It is believed and therefore averred that the Defendants' illegal requirements concerning Weisman's duties under COBRA were made in bad faith and in ongoing retaliation as more fully set forth in the Complaint.

61.   On or about September 21, 2004, Weisman, by and through his attorneys, sent a letter, attached hereto as Exhibit "J", requesting certain Township minutes and Ordinances.

62.    The Defendants Township and Stepnoski responded by letter dated September 27, 2004, a copy of which is attached hereto as Exhibit "K" stating that the provision of the requested records will be delayed, in part, because they assert that they need legal review to determine whether the minutes and ordinances are public records. It is believed and therefore averred that the Defendants assertion that legal review is necessary to determine if minutes and ordinances are public records was made in bad faith and in ongoing retaliation as more fully set forth in the Complaint.

63.    The Defendants' violations of Weisman's legal and constitutional rights, as more fully set forth in this Complaint, has caused Weisman severe emotional distress, anxiety, humiliation, loss of life's pleasures, as well as economic loss.

64.    The Defendants' violations of Weisman's contractual or quasi-contractual rights has caused economic loss.

**COUNT I**
**WEISMAN V. ALL DEFENDANTS**
**Violation of the Family Medical Leave Act**

65.    The preceding paragraphs are incorporated herein by reference.

66.    As a political subdivision, the Township is an "employer" as defined in the Family and Medical Leave Act and is covered by that law.

67.    Weisman was an "eligible" employee at all times relevant hereto, having been employed for at least 1,250 hours during the year prior to the start of his leave and having been employed by the Township for more than a year prior to the start of his leave. Weisman did not take any Family and Medical Leave Act designated leave during the twelve (12) months prior to the start of his leave on December 2, 2002.

68. Beginning December 2, 2002, Weisman had a serious health condition as defined in the Family and Medical Leave Act.  Weisman had an illness which involved, for example, a period of incapacity of more than three consecutive calendar days and treatment more than two times.  Weisman's illness also involved a regimen of continuing treatment under the supervision of a health care provider(s).

69. Weisman did not request a Family Medical Leave Act leave when he became incapacitated on December 2, 2002.

70. When Weisman became incapacitated on December 2, 2002, the Township had no policy or ordinance to implement the Family and Medical Leave Act and no policy or ordinance requiring a Family and Medical Leave Act leave to run concurrently with paid leaves.

71. The practice and custom of the Township prior to December 2, 2002, was not to count or designate time for sickness or illness as Family and Medical Leave Act time when employees had paid leave or vacation available.

72. Consistent with the practice or custom, when Weisman was out of work in March and April, 2001, he was paid accrued leaves and an advance of two weeks sick leave.  His absence was never designated by the Township as Family and Medical Leave Act leave.

73. Defendants interfered with and/or violated Weisman's rights under the Family Medical Leave Act in the following respects:

    a.  Defendants failed to provide Weisman with adequate notice of his rights under the Family Medical Leave Act or notice that fully complied with 29

C.F.R. §825.301(b)(i), failing to provide notice and/or information as to the following:

    i. The right under the policies, practices and customs of the Township to allow employees to substitute paid leave for the Family and Medical Leave Act leave; and

    ii. The right to have the Family and Medical Leave Act leave commence only after paid leaves were exhausted.

b. Defendants failed to provide Weisman with adequate notice of his rights under the Family Medical Leave Act or notice that fully complied with 29 C.F.R. §825.301(a), failing to provide notice and/or information as to Weisman's right to take leave intermittently or on a reduced leave schedule.

74. Defendants improperly and illegally notified Weisman in their December 12, 2002 letter attached hereto as Exhibit "D" that he needed a "fitness for duty" certificate in light of the fact that the Township did not have a uniformly applied policy.

75. Defendants improperly and illegally notified Weisman that he was a "key employee" when he did not meet that definition in light of the fact that the restoration of Weisman would not have caused substantial and grievous economic injury to the operations of the Township.

    i. It is believed and therefore averred that the Defendants failed and refused to take into account its ability to replace Weisman on a temporary basis;

ii.  It is believed and therefore averred that the Defendants failed and refused to take into account the cost of reinstating Weisman.

iii.  It is believed and therefore averred that reinstatement of Weisman as Township Manager would have little or no economic injury to the operations of the Township.

76.  It is believed and therefore averred that Stepnoski intentionally and willfully sought to interfere with Weisman's rights under the Family and Medical Leave Act in order to secure the job as Township Manager for himself.

77.  On or about December 16, 2002, after receipt of the Family and Medical Leave Act documents, Weisman contacted Cozza by telephone.

78.  On or about December 16, 2002, Cozza informed Weisman that the Family and Medical Leave Act documents were a formality and that the documents would have no effect on his return to work.

79.  It is believed and therefore averred that had Weisman been aware of his rights to a reduced schedule or intermittent leave, that he would have been able to structure his leave rights in a way to be able to return to work within the twelve (12) week limitation.

80.  Despite the Defendants' failures to advise Weisman of his right to intermittent or reduced schedule leave under the Family and Medical Leave Act which may have enabled him to return to work sooner, Weisman was able to return to work at his job by March 31, 2003.

81.  Had the Defendants not began counting the twelve (12) weeks of Family and Medical Leave Act leave until after the exhaustion of Weisman's paid leaves,

including accrued sick leave, compensatory time, two weeks advance of sick

leave, and vacation time, Weisman would have returned to work within the

twelve (12) weeks period of time.

### COUNT II
### WEISMAN V. ALL DEFENDANTS
### Violation of the Americans with Disabilities Act--Retaliation

82. The preceding paragraphs are incorporated herein by reference.

83. On or about February 14, 2003, Weisman engaged in the protected activity of filing

a complaint against the Township, Stepnoski and Cozza with the Equal

Employment Opportunity Commission for their violations of the Americans with

Disabilities Act.

84. On or about February 28, 2003, the Defendants, through a letter signed by Henry

Rowan, retaliated against Weisman for this filing by terminating Weisman's

employment with the Township.

85. The February 28, 2003 letter terminating Weisman's employment was an adverse

employment action in retaliation for Weisman's exercise of his rights under the

Americans with Disabilities Act.

86. On or about April 7, 2004, Weisman amended his Complaint with the Pennsylvania

Human Relations Commission, which was dual filed with Equal Employment

Opportunity Commission to include a complaint of retaliation due to his unlawful

termination.  A copy of the Amended Complaint is attached hereto as Exhibit "I".

87. The Defendants further retaliated against Weisman by appealing the initial decision

granting unemployment compensation to Weisman without cause, maliciously and

frivolously.

88. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's frivolous appeal of the Unemployment Compensation Referee's decision which upheld the initial grant of benefits.

89. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's letter setting forth unlawful requirements under the Consolidated Omnibus Reconciliation Act (COBRA).

90. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's failure and refusal to timely provide under Pennsylvania's Public Record Law requested minutes and ordinances, asserting that legal review was necessary to determine if such minutes or ordinances were public records.

**COUNT III**
**WEISMAN V. ALL DEFENDANTS**
**Violation of the Americans with Disabilities Act--Discrimination**

91. The preceding paragraphs are incorporated herein by reference.

92. By his letter dated December 30, 2002, Weisman informed the Township that he was disabled and that he was seeking accommodations for his disability.

93. The Defendants discriminated against Weisman because of his disability in violation of the Americans with Disabilities Act in the following ways:

   a. The Defendants failed to engage in the interactive process in an attempt to accommodate Weisman's disability and return him to employment with the Township;

   b. The Defendants terminated Weisman;

   c. The Defendants failed to provide notices as required under the Family and Medical Leave Act, as more thoroughly alleged previously herein;

d.  The Defendants failed to start the Family and Medical Leave Act leave only after the exhaustion of the paid leave;

e.  The Defendants required Weisman to provide a fitness for duty certificate when that was not a uniformly applied requirement;

f.  The Defendants failed to pay Weisman in accordance with the Township policy of advancing two weeks of sick leave;

g.  The Defendants failed to pay Weisman in accordance with his employment contract regarding short term disability;

h.  The Defendants failed to pay Weisman in accordance with the Township policy of compensating employees 60% of their salary during Family and Medical Leave Act leave;

i.  The Defendants failed to pay Weisman in accordance with the Township's short term disability policy; and

j.  The Defendants disclosed confidential information concerning Weisman's medical condition, impairment and/or disability.

94.  It is believed and therefore averred that it would have been a reasonable accommodation to allow Weisman to take a leave in excess of the twelve weeks allowed by the Family and Medical Leave Act.

95.  It is believed and therefore averred that had the Defendants engaged in an interactive process in good faith, that Weisman would have been permitted back to work and would not have been discharged.

96.  It is believed that Stepnoski unlawfully discriminated against Weisman in violation of the Americans with Disabilities Act as part of his personal endeavor to take Weisman's job from him.

**COUNT IV**
**WEISMAN V. ALL DEFENDANTS**
**Violation of the Pennsylvania Human Relations Act—Retaliation**

97.  The preceding paragraphs are incorporated herein by reference.

98.  On or about February 14, 2003, Weisman engaged in the protected activity of filing a complaint against the Township, Stepnoski and Cozza with the Pennsylvania Human Relations Commission for their violations of the Pennsylvania Human Relations Act.

99.  On or about February 28, 2003, the Township, through a letter signed by Henry Rowan retaliated against Weisman for this filing by terminating Weisman's employment with the Township.

100.  The February 28, 2003 letter terminating Weisman's employment was an adverse employment action in retaliation for Weisman's exercise of his rights under the Pennsylvania Human Relations Act.

101.  On or about April 7, 2004, Weisman amended his Complaint with the Pennsylvania Human Relations Commission, which was dual filed with Equal Employment Opportunity Commission, to include a complaint of retaliation due to his unlawful termination.  A copy of the Amended Complaint is attached hereto as Exhibit "I".

102.  The Defendants further retaliated against Weisman by appealing the initial decision granting of unemployment compensation to Weisman without cause, maliciously and frivolously.

103. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's frivolous appeal of the Unemployment Compensation Referee's decision which upheld the initial grant of benefits.

104. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's letter setting forth unlawful requirements under the Consolidated Omnibus Reconciliation Act (COBRA).

105. Further evidence of the Defendants' ongoing antagonism against Weisman was the Township's failure and refusal to timely provide under Pennsylvania's Public Record Law requested minutes and ordinances, asserting that legal review was necessary to determine if such minutes or ordinances were public records.

**COUNT V**
**WEISMAN V. ALL DEFENDANTS**
**Violation of the Pennsylvania Human Relations Act--Discrimination**

106. The preceding paragraphs are incorporated herein by reference.

107. By his letter dated December 30, 2002, Weisman informed the Township that he was disabled and that he was seeking accommodations for his disability.

108. The Defendants discriminated against Weisman because of his disability in violation of the Pennsylvania Human Relations Act in the following ways:

    a.  The Defendants failed to engage in the interactive process in an attempt to accommodate Weisman's disability and return him to employment with the Township;

    b.  The Defendants terminated Weisman;

    c.  The Defendants failed to provide notices as required under the Family and Medical Leave Act, as more thoroughly alleged previously herein;

d.  The Defendants failed to start the Family and Medical Leave Act leave only after the exhaustion of the paid leave;

e.  The Defendants required Weisman to provide a fitness for duty certificate when that was not a uniformly applied requirement;

f.  The Defendants failed to pay Weisman in accordance with the Township policy of advancing two weeks of sick leave;

g.  The Defendants failed to pay Weisman in accordance with his employment contract regarding short term disability;

h.  The Defendants failed to pay Weisman in accordance with the Township policy of compensating employees 60% of their salary during Family and Medical Leave Act leave;

i.  The Defendants failed to pay Weisman in accordance with the Township's short term disability policy; and

j.  The Defendants disclosed confidential information concerning Weisman's medical disability.

109. It is believed and therefore averred that it would have been a reasonable accommodation to allow Weisman to take a leave in excess of the twelve weeks allowed by the Family and Medical Leave Act.

110. It is believed and therefore averred that had the Defendants engaged in an interactive process in good faith, that Weisman would have been permitted back to work and would not have been discharged.

111. It is believed that Stepnoski unlawfully discriminated against Weisman in violation of the Pennsylvania Human Relations Act as part of his endeavor to take Weisman's job from him.

**COUNT VI**
**WEISMAN VS. ALL DEFENDANTS**
**Invasion of Privacy—United States Constitution**

112. The preceding paragraphs are incorporated herein by reference.

113. Each of the individual Defendants named herein is a policy maker.

114. It is believed and therefore averred that one or more of the individual Defendants made public and/or caused to be published in the newspaper that Weisman was ill and/or stated to individuals that Weisman was ill and/or suffering from a mental illness.

115. It is believed and therefore averred that the disclosures by one or more of the individual defendants constituted an unconstitutional invasion of privacy protected by the United States Constitution.

116. It is believed and therefore averred that the aforesaid disclosures were pursuant to a policy, practice or custom as defined in law, so that the Township as an entity, as well as the individual defendant(s) who made the disclosures are liable to Weisman.

**COUNT VII**
**WEISMAN V. TOWNSHIP**
**Breach of Contract and/or Promissory Estoppel**

117. The preceding paragraphs are incorporated herein by reference.

118. Weisman accepted the position of Township Manager in July 2000 in justifiable reliance on the assertion that his employment agreement and severance agreement were acceptable and agreed to by the Township Supervisors.

119. Weisman was told that the employment agreement and severance agreement were acceptable to and agreed upon by the Supervisors on behalf of the Township.

120. Weisman was told by the Township solicitor, Craig Smith, Esquire that the employment contract and severance agreement were acceptable and would be signed in due course.

121. Weisman was led to believe that the employment contract and severance agreement were acceptable to the Supervisors because, in July, 2000 after Weisman was officially appointed to the position of Township manager, all conditions of his employment contract were put into place, including, but not limited to:

    a.   salary;

    b.   use of Township vehicle;

    c.   pension plan provisions;

    d.   payment of relevant dues and subscriptions;

    e.   payment of continuing education classes;

    f.   implementation of life insurance policy; and

    g.   vacation time.

122. Defendants promises to Weisman concerning the agreements induced Weisman to accept the position as Township Manager and not seek other employment opportunities or decline the position and continue his employment in the capacity of Financial Director.

123. Defendants should have reasonably known that their assertions concerning the acceptance of the employment and severance agreements would be relied upon by Weisman.

124. Through his letter dated December 30, 2003, Weisman indicated that he was disabled and requested that the Township fulfill their obligation under his employment contract and compensate him under the short-term disability provisions of his contract.

125. In response, the Defendants did not offer to engage in an interactive process or pay any disability benefits.

126. After receiving the letter dated February 28, 2003 from Rowan terminating his employment with the Township, Weisman, through counsel, requested that he be compensated in accordance with the severance agreement.

127. Through counsel, the Township refused to comply with the severance agreement and did not compensate Weisman in accordance with the agreement.

128. The Defendants breached the employment and severance agreements with Weisman in multiple ways, including:

    a.  The Township failed to put in place disability policies that met the terms of the employment agreement;

    b.  The Township failed to compensate Weisman under the terms for short term disability provided in the employment agreement;

    c.  The Township did not provide Weisman with the ability to use his compensatory time for the hours worked above and beyond regular business hours when he became ill in violation of his employment agreement;

    d.  The Township failed to pay Weisman a lump sum of one half his salary as provided in the severance agreement;

    e.   The Township failed to pay for health care coverage for Weisman and his family for six months following termination as provided in his severance agreement; and

    f.   The Township opposed Weisman's proceedings to secure unemployment compensation and provided more than just financial information to the Department of Labor and Industry, Bureau of Unemployment Compensation in violation of the terms of his severance agreement.

129.   In addition, the equitable theory of promissory estoppel works to prevent the injustice inflicted upon Weisman as a result of his reasonable reliance on Defendants promises.

**COUNT VIII**
**WEISMAN V. STEPNOSKI**
**Tortious Interference with Contractual Relationship**

130.  The preceding paragraphs are incorporated herein by reference.

131.  Stepnoski acting for himself and to promote his own self interest in his efforts to become Township Manager took actions that were willful and intentional; were calculated to cause damage to Weisman in his contractual relations with the Township; were done with the unlawful purpose of causing damage and loss to the Weisman without right or justifiable cause on the part of Stepnoski; and caused actual damage and loss to Weisman.

132.  When Stepnoski was taking action to cause Weisman's dismissal from employment in order to procure the job for himself, he was not acting in the course and scope of his employment, but was acting for his own self interests.

**COUNT IX**
**WEISMAN VS. ALL DEFENDANTS**
**Violation of the Sunshine Act**

133. The preceding paragraphs are incorporated herein by reference.

134. The Defendants are subject to the requirements of the Sunshine Act.

135. Weisman was never advised that there was a public vote or action to terminate Weisman.

136. It is believed and therefore averred that there was no public vote to designate Weisman as a key employee as defined in the Family and Medical Leave Act.

137. It is believed and therefore averred that the actions to designate Weisman as a key employee and to terminate him were made in violation of the Sunshine Act because there were no public votes duly recorded in the minutes of the Township.

**COUNT X**
**WEISMAN V. ALL DEFENDANTS**
**Violation of the Second Class Township Code**

138. The preceding paragraphs are incorporated herein by reference.

139. The Defendants are subject to the requirements of the Second Class Township Code. *See,* 53 P.S. §65101.

140. The Second Class Township Code requires that for any official business to be transacted, it must be done by an affirmative vote of the majority of the Board of Supervisors at a public meeting. *See,* 53 P.S. §65603.

141. It is believed and therefore averred that the Township's designation of Weisman as a key employee was not accomplished by an affirmative vote of the majority of members of the Board of Supervisors at a public meeting.

142.   It is believed and therefore averred that the termination of Weisman's employment was not accomplished by an affirmative vote of the majority of members of the Board of Supervisors at a public meeting.

143.   These actions by the Defendants are invalid pursuant to the Second Class Township Code as they were not accomplished by majority vote of the Board of Supervisors at a public meeting.

**Relief**

Wherefore, Weisman requests the Court to enter judgment in his favor and against the Defendants and to award all remedies as and to the extent allowed by law, including:

1.   compensatory damages for all economic losses;

2.   compensatory damages for all non-economic losses, including pain and suffering, anxiety, humiliation, and deprivation of life's pleasures;

3.   reinstatement with back pay and benefits;

4.   punitive damages as to the individual defendants;

5.   interest;

6.   liquidated damages;

7.   attorneys fees and costs;

8.   a declaration that Weisman was not a key employee as defined in the Family and Medical Leave Act; that the employment agreement and severance agreement as attached to this Complaint are lawful and in effect; that the Defendants violated Weisman's rights in violation of the Family and Medical Leave Act, the Americans with Disabilities Act, the Pennsylvania Human Relations Act, the Sunshine Act and his rights under his employment agreement and his severance

agreement; and that Weisman's rights to privacy were violated under both the state and federal constitutions;

9.  injunctive relief enjoining the Defendants from: (i) unlawfully discriminating against him, (ii) unlawfully retaliating against him, (iii) unlawfully interfering with his rights under the Family and Medical Leave Act, (iv) taking action in violation of the Sunshine Act, (v) invading the Plaintiff's rights to privacy by disclosing medical information to members of the public;  and compelling the Defendants to: (i) reinstate Weisman as Township Manager; (ii) engage in the interactive process as and when required by the Americans with Disabilities Act and the Pennsylvania Human Relations Act; and (iii) to provide all notices as and when required by the Family and Medical Leave Act;

10. injunctive relief removing Stepnoski as Township Manager; and

11. such further relief that the Court deems just and proper.

LEVIN LEGAL GROUP, P.C.

_____
Michael I. Levin, Esquire
Stacy G. Smith, Esquire
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA  19006
215-938-6378
(Counsel for Plaintiff)